IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GENE AMBERT,
      Petitioner,

vs.                        Case No.:  4:16cv218/WS/EMT

JONES,
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's Third Amended Petition, filed under 28 U.S.C. § 2254 (ECF No. 22).  Respondent filed an answer and relevant portions of the state court record (ECF No. 32).  Petitioner filed a reply (ECF No. 72).  Petitioner has also filed several motions (*see* ECF Nos. 64–71, 73).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  Additionally, the

pleadings and attachments before the court show that Petitioner is not entitled to federal habeas relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 32).[1]  Petitioner was charged in the Circuit Court in and for Leon County, Florida, Case No. 2007-CF-2378, with one count of lewd or lascivious molestation of a child under the age of 12 (Ex. A at 5, Ex. B1 at 7). Following a jury trial, Petitioner was found guilty as charged (Ex. B1 at 44, Ex. B2B, B2C).  On December 11, 2009, the trial court adjudicated Petitioner guilty and sentenced him to life in prison with pre-sentence jail credit of 274 days (Ex. B1 at 48–57, Ex. B2A at 1–21).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-6604 (Ex. C).  The First DCA affirmed the judgment per curiam without written opinion on August 3, 2011, with the mandate issuing October 3, 2011 (Exs. F, G).  Ambert v. State, 69 So. 3d 279 (Fla. 1st DCA 2011) (Table).

---

[1] Citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 32).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

On August 30, 2012, Petitioner filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, asserting nineteen ineffective assistance of trial counsel ("IATC") claims (Ex. J5). Petitioner subsequently filed an amended Rule 3.850 motion asserting ten IATC claims (Ex. J1 at 1–88). The circuit court appointed post-conviction counsel, and on June 5, 2014, the court held an evidentiary hearing on all ten of Petitioner's claims (Ex. J1 at 92–93, Ex. J4 at 590–725). The court denied the amended Rule 3.850 motion in an order rendered on June 9, 2014 (Ex. J1 at 154).[2] Petitioner appealed the decision to the First DCA, Case No. 1D14-2747 (Ex. K). The First DCA affirmed the decision per curiam without written opinion on November 16, 2015, with the mandate issuing March 1, 2016 (Exs. P, S). Ambert v. State, 184 So. 3d 518 (Fla. 1st DCA 2015) (Table). On February 16, 2016, Petitioner filed a "Request for Appeal or Certiorari" in the Florida Supreme Court, Case No. SC16-316 (Ex. N). The Florida Supreme Court dismissed the petition for lack of jurisdiction on February 19, 2016. Ambert v. State, No. SC16-316, 2016 WL 688245, at *l (Fla. Feb. 19, 2016) (Ex. O). On May 12, 2016, Petitioner filed a petition for writ of certiorari in the United States

---

[2] Prior to the evidentiary hearing, Petitioner filed a pro se "Notice of Expiration of Speedy Trial Time (Part I) and Final Motion to Discharge (Part II)" and "Final Motion to Discharge (Hybrid Part II)" (Ex. J1 at 155–200, Ex. J2 at 201–72). The circuit court struck the pro se motion as a nullity on June 11, 2014, because Petitioner was represented by counsel (Ex. J2 at 273).

Supreme Court, Case No. 16-6177, followed by a "Corrected" Petition on May 17, 2016 (Ex. P2).  The Supreme Court denied the petition on November 14, 2016 (Ex. Q2).  On September 16, 2016, Petitioner filed a "Second Corrected" petition for writ of certiorari in the United States Supreme Court, Case No. 16-5138 (Ex. R2).  The Supreme Court denied the petition on October 3, 2016 (Ex. S2).

On September 30, 2013, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1Dl3-4816, alleging ineffective assistance of appellate counsel ("IAAC") (Ex. V).  The First DCA denied the petition on the merits on November 25, 2013.  Ambert v. State, 129 So. 3d 396 (Fla. 1st DCA 2013) (Ex. W). The court denied Petitioner's motion for rehearing on January 13, 2014 (Ex. Y).

On July 1, 2014, Petitioner filed a motion to correct jail time, pursuant to Rule 3.801 of the Florida Rules of Criminal Procedure (Ex. J2 at 283–95).  On July 11, 2014, Petitioner filed the following documents:  "Amended Notice of Expiration of Speedy Trial Time (Part I) and Amended Final Motion to Discharge (Part II)," and "Amended Final Motion to Discharge (Hybrid Part II)" (Ex. J2 at 363–400, Ex. J3 at 401–589).  The state circuit court summarily denied the motion to correct jail time on August 27, 2014 (Ex. J4 at 726).  The court denied Petitioner's other filings in a separate order also rendered on August 27, 2014 (id. at 739).  Petitioner appealed both

decisions to the First DCA, Case No. 1D14-4741 (Ex. L2).  The First DCA affirmed the decisions per curiam without written opinion on January 13, 2015, with the mandate issuing February 10, 2015 (Exs. N2, O2).  Ambert v. State, 156 So. 3d 1075 (Fla. 1st DCA 2015) (Table).

On or about September 30, 2014, Petitioner filed a Petition for Writ of Prohibition in the First DCA, Case No. 1Dl4-4504 (Ex. Z).  The First DCA dismissed the petition on October 21, 2014 (Ex. A2).  Ambert v. State, 152 So. 3d 13 (Fla. 1st DCA 2014) (id.).  The First DCA denied Petitioner's motion for rehearing on December 4, 2014 (Ex. D2).

On April 9, 2015, Petitioner filed a petition for writ of prohibition in the Florida Supreme Court, Case No. SC15-665 (Ex. T).  On April 13, 2015, the court issued an order directing Petitioner to show cause why his petition should not be dismissed as unauthorized (Ex. TIA).  The Florida Supreme Court dismissed Petitioner's petition for writ of prohibition on July 10, 2015 (Ex. U).  Ambert v. State, 173 So. 3d 960 (Fla. 2015).

On October 8, 2015, Petitioner filed a petition for belated appeal (seeking a second direct appeal of the criminal judgment) in the First DCA, Case No. 1D15-4609 (Ex. E2).  On December 9, 2015, the First DCA dismissed the petition per curiam

without written opinion (Ex. G2).  Ambert v. State, 184 So. 3d 518 (Fla. 1st DCA 2015).  The court denied Petitioner's motion for rehearing on February 11, 2016 (Ex. I2).

Petitioner commenced this instant federal habeas action on April 7, 2016 (ECF No. 1).

II.     STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)**  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > **(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review

in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The

appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the Williams framework, on any issue raised in a federal habeas

petition upon which there has been an adjudication on the merits in a state court

proceeding, the federal court must first ascertain the "clearly established Federal law,"

namely, "the governing legal principle or principles set forth by the Supreme Court

at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63,

71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established"

only when a Supreme Court holding at the time of the state court decision embodies

the legal principle at issue.  Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175

L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L.

Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for

purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. See Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the

federal habeas court must independently consider the merits of the petitioner's claim.

*See* <u>Panetti v. Quarterman</u>, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  <u>Williams</u>, 529 U.S. at 409; *see* <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  <u>Harrington</u>, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

<u>Woods</u>, 135 S. Ct. at 1376 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear

and convincing evidence." *Id.*; *see, e.g.*, Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *See* Cave v. Sec'y for Dep't of Corr., 638 F.3d 739 (11th Cir. 2011).  However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  Gill, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this

standard is difficult to meet, that is because it was meant to be." <u>Richter</u>, 562 U.S. at

102.

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition

that the petitioner have exhausted available state court remedies, 28 U.S.C.

§ 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct'

alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364,

365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S.

270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the

exhaustion requirement, the petitioner must "fairly present" his claim in each

appropriate state court, alerting that court to the federal nature of the claim.  <u>Duncan</u>,

---

[3] Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)   the applicant has exhausted the remedies available in the courts of the
State; or
          (B) (i)  there is an absence of available State corrective process; or
           (ii)  circumstances exist that render such process ineffective to protect the
rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts
of the State, within the meaning of this section, if he has the right under the law of the State
to raise, by any available procedure, the question presented.

513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39

(1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7.  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  *Id.*, 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

that an evidentiary ruling at a state court trial denied him the due process of law

guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in

state court." Duncan, 513 U.S. at 365–66.

In Baldwin v. Reese, the Supreme Court again focused upon the requirement

of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present'

a claim to a state court if that court must read beyond a petition or a brief (or a similar

document) that does not alert it to the presence of a federal claim in order to find

material, such as a lower court opinion in the case, that does so." 541 U.S. 27, 32, 124

S. Ct. 1347, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "a litigant

wishing to raise a federal issue can easily indicate the federal law basis for his claim

in a state-court petition or brief, for example, by citing in conjunction with the claim

the federal source of law on which he relies or a case deciding such a claim on federal

grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. With regard

to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291

(11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor
> indeed for petitioners seeking to establish exhaustion. However, we
> agree with the district court that this language must be "applied with
> common sense and in light of the purpose underlying the exhaustion
> requirement[:] 'to afford the state courts a meaningful opportunity to
> consider allegations of legal error without interference from the federal

judiciary.'" <u>McNair</u> [v. Campbell], 315 F. Supp. 2d [1277,] 1184 [(M.D. Ala. 2004)] (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[5]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.");

---

[5] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id*. A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state

procedural rules to resolve the federal claim.[6]  *Id.*  Second, the state court's decision

on the procedural issue must rest entirely on state law grounds and not be intertwined

with an interpretation of federal law.  *Id.*  Third, the state procedural rule must be

adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must

be firmly established and regularly followed, that is, not applied in an arbitrary or

unprecedented fashion.  *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice

or a fundamental miscarriage of justice in order for the federal habeas court to reach

the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to

exist, an external impediment, whether it be governmental interference or the

reasonable unavailability of the factual basis for the claim, must have prevented

petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct.

1454, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106

S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception,

the petitioner must show that "a constitutional violation has probably resulted in the

conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115

---

[6] The federal court should honor the procedural bar even if the state court alternatively
reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995);
Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence.  *See* McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]."  513 U.S. at 332; *see also* House v. Bell, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

Within this framework, the court will review Petitioner's claims.

IV.  PETITIONER'S CLAIMS

A.    Ground One:  "Plea bargain."

Petitioner alleges his trial counsel was ineffective during plea negotiations, because counsel failed to advise him that the trial court had only two sentencing options if Petitioner was convicted, either a 25-year mandatory minimum sentence or a life sentence (ECF No. 22 at 5–6).[7]  Petitioner alleges the sentencing scoresheet did not indicate that there was a mandatory minimum sentence (*id.*).  Petitioner alleges he believed that the range of his possible sentence was 7 years to life, as reflected in the sentencing scoresheet (*id.*).  He alleges he personally believed that his crime was a "1" on a scale of 1–10, and warranted a sentence in the range of 7 years if he was convicted (*id.*).  Petitioner alleges he would have accepted the State's 15-year plea offer if trial counsel had advised him about the 25-year mandatory minimum sentence (*id.*).  Petitioner asserts his appellate counsel should have presented this issue on direct appeal (*id.*).  Petitioner states he presented Ground One to the state courts in his Rule 3.850 motion (*id.*).

Respondent asserts it appears that Petitioner exhausted the IATC claim by presenting it as Ground Three of his Amended Rule 3.850 motion (ECF No. 32 at 9–10).  Respondent contends the state court's adjudication of the IATC claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at

---

[7] Citations to the parties' pleadings refer to the page numbers automatically assigned by the court's electronic filing system, rather than the page numbers assigned by the parties.

71–74).  With respect to the IAAC claim, Respondent argues Petitioner procedurally

defaulted the claim by failing to present it in his state habeas petition alleging other

IAAC claims (*id.* at 10–11).  Respondent asserts the IAAC claim is now procedurally

barred (*id.*).  Respondent additionally contends that even if Petitioner properly

exhausted the IAAC claim, it is without merit (id. at 74–76).

        1.     <u>IATC Claim</u>

        a.     Clearly Established Federal Law

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining

process.  <u>Lafler v. Cooper</u>, 566 U.S. 156, 162–63, 132 S. Ct. 1376, 182 L. Ed. 2d 398

(2012) (citing <u>Missouri v. Frye</u>, 566 U.S. 133, 145, 132 S. Ct. 1399, 182 L. Ed. 2d 379

(2012), and <u>McMann v. Richardson</u>, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d

763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective

assistance of counsel in considering whether to accept it."  <u>Lafler</u>, 566 U.S. at 168.

The two-part test articulated in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct.

2052, 80 L. Ed. 2d 674 (1984) applies to claims that counsel was ineffective during

the plea process.  <u>Lafler</u>, 566 U.S. at 162–63 (applying <u>Strickland</u>'s two-part test to

federal habeas petitioner's claim that counsel was ineffective for advising him to

reject a plea offer); <u>Frye</u>, 132 S. Ct. at 1404, 1409–10 (applying <u>Strickland</u>'s two-part

test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); Hill v. Lockhart, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying Strickland's two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

Strickland's first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 688). The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." Strickland, 466 U.S. at 691. The Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is

not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann, 397 U.S. at 769–70.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to

"offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.*

Strickland's second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. If a plea offer has been rejected due to counsel's allegedly deficient performance, a defendant shows prejudice by demonstrating a reasonable probability that: (1) he would have accepted the earlier plea offer had he been afforded effective assistance of counsel during plea negotiations; (2) the plea would have been entered without the State canceling it or the trial court refusing to accept it; and (3) the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. *See* Lafler, 566 U.S. at 164.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice

components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting <u>Strickland</u>'s high bar is never an easy task."  <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult."  <u>Richter</u>, 131 S. Ct. at 788.  As the <u>Richter</u> Court explained:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

*Id.* (citations omitted).

### b.    Federal Review of State Court Decision

Petitioner presented this IATC claim as Amended Ground Three of his Amended Rule 3.850 motion (Ex. J1 at 15–18).  The state circuit court held an evidentiary hearing on June 5, 2014, at which both Petitioner and his trial counsel, William Bubsey, testified (Ex. J4).  Petitioner testified that very close to the date his case was scheduled for trial, Attorney Bubsey visited him at the Leon County Jail and

advised him that the State offered "15 years straight time," meaning, that he would serve 15 years in prison (Ex. J4 at 622–23). Petitioner testified Bubsey provided him a copy of his sentencing scoresheet, and Petitioner understood that the lowest permissible prison sentence the judge could impose was 7 years and a few months, and that the maximum he could receive was life in prison (*id.* at 623–25). Petitioner testified Bubsey never mentioned a 25-year mandatory minimum sentence (*id.* at 624, 627). Petitioner testified Bubsey recommended that he take the 15-year plea offer, and emphasized that Petitioner could be sentenced to life if he was convicted (*id.* at 626). Petitioner testified he told Bubsey he wanted to talk to his wife, and Bubsey agreed, but he told Petitioner that the decision needed to be made "right away," because the trial date was very near (*id.* at 623). Petitioner testified he talked to his wife, and he took her thoughts into account when making his decision (*id.* at 624). Petitioner testified Attorney Bubsey returned to the Jail the next day and, in Petitioner's words, "I told him that I was going to reject the offer, that I was innocent, and that I wanted to go to trial and that the judge here would look at the circumstances and would be just." (*id.* at 623–24, 626–27). Petitioner testified that if he had known about the 25-year mandatory minimum, he would have entered an "Alford" plea, meaning, he would have accepted the plea but declared that he was not guilty (*id.* at

627–28).  Petitioner testified that Attorney Bubsey's failure to inform him of the 25-

year mandatory  minimum impacted his decision regarding the plea, because his age

was such that a 25-year sentence was practically a life sentence (Petitioner was 58

years old at the time of trial) (*id.* at 628).

On  cross-examination,  Petitioner  clarified  that  it  was  his  own  belief,  not

Attorney Bubsey's, that the judge would be lenient if he lost at trial:

> A [by Petitioner].  Mr. Bubsey said that the judge would be able
> to start with the seven years and go up from that.  And the—the fact that
> there was no nudity, there was no sex, there was nothing other than a
> contact through the clothing seemed [sic] to be the very minimum of that
> —that law.

> Q [by the State].  Was that your belief or is that what Mr. Bubsey
> was explaining to you?

> A.  That's what I told Mr. Bubsey.  That I believed that they
> would see from the facts of the case and they would understand that there
> was no intent.  And that they would be lenient on that case if I lost. But
> that, since I was not guilty, I wanted to go to trial.

> Q.  So you thought a judge that [sic] knew that you were already
> a convicted child molester from California and that you'd come to
> Florida and had been federally prosecuted for failing to register after a
> conviction would think that you deserve the low end of the guidelines?
> Is that your testimony?

> A.  Someone who was—who had pled guilty 35-years-old [sic]
> and had led an excellent life in those 35 years since.  And who was
> arrested under a law that is right now, my case is on appeal on the basis

of actual innocence and has been in the federal courts for 17 months pending appeal and has not been dismissed.

Q. So was that all a yes that you think the judge would have given you seven years, the bottom of the guidelines, if you were convicted knowing your history?

A. The fact that there was no nudity. I did not expose myself. I never discussed any sexual act or anything of that sort with this child [the 10-year-old victim testified that Petitioner touched his penis over his underpants while they were "wrestling" (*see* Ex. B2B at 114–15)]. There was nothing on my part that showed that I had the intent to do anything other than punish him because of what he had done.

He had been poking me and doing things like that and I told him to stop multiple times. And the one time that he finally did it and I said I don't like that and I poked him back through his clothes and I went poke, poke, he said oh that hurts. And I said well now you know what it feels like when you do it to me. I don't like it. That's all I did.

Q. Did you tell your lawyer that you would accept a plea offer of 12 years in the Department of Corrections?

A. No. I didn't tell him that. I think what I told him was I understood that it would be something like 12 years and could he confirm that with gain time.
. . . .
Q. Where did you come up with 12 years?

A. I don't know. I was trying to—I didn't know what the law was and I was trying to do 15% off of 15 years for gain time and whatever that is, 12-and-a-half years or whatever. Oh and jail time credits.

Q. So you didn't reject the 15 year offer and say you would accept 12?

A.  No.

Q.  Okay.

A.  That I would accept 12?  No.

. . . .

I may have told him to negotiate but—

Q.  So with—with getting the time off, as you calculated it, why didn't you accept the 15 years?

. . . .

A.  Because I—I truly believed that the facts of the case would show the judge that I didn't deserve that.  And that he could start at seven and if seven is the—the minimum, looking at—at the way—the way the guidelines, I'm sorry, the sentencing guidelines.  It looked like they would do percentage increases over that to come to a—to a total range.  I didn't understand how the life fits in with the range but I certainly didn't know that it was a minimum mandatory.

Q.  So what your testimony is, if you would have known there was a 25 year minimum mandatory, you would have accepted the 15 years?

A.  Oh yes.

(Ex. J4 at 647–49).

Attorney Bubsey acknowledged that he did not discuss the 25-year mandatory minimum with Petitioner prior to trial because neither he nor the State Attorney was aware of it (Ex. J4 at 677).  Bubsey testified, however, that he discussed with Petitioner the fact that he faced a maximum sentence of life in prison; in fact, Bubsey told Petitioner, "[I]f you contest this you might get convicted.  And if you're

convicted . . . you probably will get a life sentence." (*id.* at 675–77).  Attorney Bubsey testified he further advised Petitioner that the trial court might well impose the maximum sentence.    Attorney Bubsey further testified that Petitioner's wife recommended that Petitioner accept the 15-year offer (*id.* at 673, 676).

Based on the above testimony, the state circuit court denied Petitioner's IATC claim.  The court's specific findings on this claim were the following:

> Claim—Ground 3, failure to properly explain his plea options.  I accept Mr. Bubsey's testimony which is quite different than the defendant's on that topic.  He says he told the defendant that if you go to trial you in all likelihood are going to serve life in prison.
>
> I know Mr. Bubsey was trying to be polite here and didn't want to say that he knew I was the sentencing judge and he had a pretty good idea what I would do at sentencing after a trial in this case with a person with a prior sex offense from California, a failure to register offense in federal court, and the aggravating circumstances that had been determined during the course of this case.  I think he was trying to politely say he understood what was going to happen which is what did happen—Mr. Ambert [would] be sentenced to life in prison.
>
> Now, Mr. Bubsey clearly acknowledged at sentencing and I've reviewed the transcript that he was not aware of the 25 year mandatory.  Frankly, I remember—I remember this and it was—it was frankly a surprise to me when I was preparing for sentencing on that date when I discovered that provision.  Obviously, based upon his testimony, it was a surprise to the State Attorney also.
>
> So I guess my first finding is I do not accept Mr. Ambert's testimony that he would have . . . agreed to a plea had that been explained to him.  That cuts directly against being told if you go to trial

you're going to get life in prison.  It's not about a 25 year mandatory minimum.  It's life in prison.

The second issue is whether that's really unreasonable that he was not aware of that provision.  I've been involved in handling criminal cases since January 1979.  I have a passing acquaintance with criminal law.  It was new to me that day when we discovered it.  It was new to an experienced prosecutor.  I don't think it was unreasonable that he was not aware of that provision of—I had the statute here a moment ago—775—anyway I don't—we know what the statutory recitation is.  775 provision that's in—that puts in the 25 year mandatory minimum.

So my first finding is that Mr. Ambert would not have pled anyway.  My second finding is that it was not unreasonable so there is neither ineffective assistance of counsel or prejudice.

(Ex. J4 at 716–18).  After the evidentiary hearing, the court issued a written order denying the Amended Rule 3.850 motion and stating, "Based on the reasons announced on the record, the Court finds the defendant has failed to show that he received ineffective assistance of counsel or that he was prejudiced by any alleged deficiency." (Ex. J1 at 154).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed without written opinion (Ex. M).

The Eleventh Circuit has held that a defendant fails to satisfy Lafler where the trial court could not have sentenced him to the prosecutor's recommended sentence under the plea, because the recommended sentence was below the statutory mandatory minimum.  *See* Osley v. United States, 751 F.3d 1214, 1225 (11th Cir. 2014) (citing

United States v. Castaing–Sosa, 530 F.3d 1358, 1360 (11th Cir. 2008) ("It is well-settled that a district court is not authorized to sentence a defendant below the statutory mandatory minimum unless the government filed a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 or the defendant falls within the safety-valve of 18 U.S.C. § 3553(f).")).

Here, the trial court could not have sentenced Petitioner to 15 years in prison, because it was below the 25-year minimum mandated by Florida Statutes § 775.082(3)(a)4.a.  Because the court could not have sentenced Petitioner in accordance with a 15-year plea agreement, Petitioner failed to show a reasonable probability the trial court would have accepted his plea based upon the parties' agreement to a 15-year sentence.  Petitioner's failure to make this showing rendered him unable to demonstrate prejudice under Strickland.  *See* Lafler, 566 U.S. at 164.


Additionally, the state court did not find credible Petitioner's testimony that he would have accepted a 15-year plea offer.  "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."  Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); *see also* Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007)

(noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")).  Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983); *see also* Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998); Smith v. Kemp, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing."). Questions of the credibility and demeanor of a witness are questions of fact.  *See* Consalvo, *supra* (citing Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999) (en banc)).  "The deference compelled by the AEDPA requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations."  Nejad v. Attorney, 830 F.3d 1280, 1292 (11th Cir. 2016) (internal quotation marks and citation omitted).  Instead, "[i]n the absence of clear and

convincing evidence, [courts] have no power on federal habeas review to revisit the

state court's credibility determinations." *Id.* (emphasis in original) (citation omitted).

Petitioner has not rebutted the state court's credibility determination with clear

and convincing evidence.  Although Petitioner testified he would have accepted a plea

offer if he had been aware of the 25-year mandatory minimum,  his testimony at the

evidentiary hearing suggested he would <u>not</u> have accepted a plea offer.  Petitioner

testified that, given his age, he viewed a 25-year sentence as a life sentence.[8]

Additionally, Petitioner testified he sincerely believed that the evidence would show

that he did not touch the victim with a lewd or lascivious intent.  Petitioner believed

that even if the jury convicted him, the sentencing court would perceive his conduct

as a minimal violation of the law, and exercise leniency by sentencing him to the

lowest permissible sentence.  Petitioner was clearly unfazed by Attorney Busbey's

warning him that he believed the court would probably impose a life sentence if

Petitioner was convicted at trial.  So even if Petitioner had been advised that the

lowest permissible sentence was 25 years, his testimony reasonably suggests he would

---

[8] Attorney Busbey's comments to the court during Petitioner's sentencing hearing show that Petitioner shared this view with Busbey during their discussions of the plea offer.  Attorney Busbey told the sentencing court that during plea discussions, Petitioner stated he wanted to go to trial because, "he's 58 years old, 15, 25, 40, whatever, from his perspective is a life sentence . . . ." (Ex. B2A at 5).  Attorney Busbey added that Petitioner had a family history of early deaths, "[H]is father died early, his brother died early.  He thinks that the same may befall him." (*id.* at 6).

have not have accepted a plea offer and instead would have taken a chance that the jury might find him not guilty.

Petitioner failed to show that the state court unreasonably determined the facts or unreasonably applied clearly established federal law in rejecting Petitioner's IATC claim on the prejudice prong.  Therefore, Petitioner is not entitled to federal habeas relief on the IATC claim asserted in Ground One.  *See, e.g.*, <u>Duffy v. Sec'y, Dep't of Corr.</u>, 729 F. App'x 669, 671 (11th Cir. 2018) (petitioner failed to demonstrate that his IATC claim, based upon counsel's failure to advise him of the "pros and cons" of the state's four-year plea offer, had some merit; petitioner cited to nothing suggesting that the trial court would have accepted the negotiated plea of a four-year sentence, especially when the mandatory-minimum sentence was fifteen years in prison) (unpublished but recognized as persuasive authority); <u>Fisher v. Sec'y, Fla. Dep't of Corr.</u>, 616 F. App'x 916, 919–22 (11th Cir. 2015) (Florida court reasonably found that petitioner's testimony, that he would have accepted a 15-year plea offer if he had known that a 40–year maximum/30–year minimum mandatory enhancement applied, was not credible, since Petitioner knew that his potential sentence exposure was significantly higher than the sentence required by the enhancement, and he rejected the 15-year plea offer despite this knowledge; because petitioner could not satisfy

<u>Lafler</u>'s requirement of showing that he would have accepted the plea offer but for the ineffective advice of counsel, he could not prevail on the "unreasonable application" prong of § 2254(d)).

### 2.    IAAC Claim

The undersigned agrees with Respondent that Petitioner's IAAC claim—that his appellate counsel was ineffective for failing to present the "plea bargain" issue on direct appeal—was procedurally defaulted in the state courts and is thus procedurally barred in this federal proceeding.  In Florida, an IAAC claim is properly brought in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken. *See* Fla. R. App. P. 9.141(d); <u>Davis v. State</u>, 875 So. 2d 359, 372 (Fla. 2003). Here, Petitioner filed a habeas petition in the First DCA, but he did not present an IAAC claim based upon counsel's failure to raise the "plea bargain" issue on direct appeal (*see* Ex. V).  Furthermore, Petitioner cannot return to state court to exhaust this IAAC claim, because the limitations period set forth in Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure has expired.

Petitioner has not shown cause for his failure to present the IAAC claim in his state habeas petition (*see* ECF No. 72 at 45).  Petitioner cites <u>Martinez v. Ryan</u>, 566 U.S. 1, 132, S. Ct. 1309, 182 L. Ed. 2d 272 (2012) throughout his reply (*see* ECF No.

72).   However, the Supreme Court has declined to extend <u>Martinez</u> to procedurally

defaulted IAAC claims.  *See* <u>Davila v. Davis</u>, 137 S. Ct. 2058, 2065, 198 L. Ed. 2d

603 (2017).  Additionally, Petitioner has not shown he is entitled to a merits review

through the "fundamental miscarriage of justice" exception.  He has not alleged the

existence of new reliable evidence showing that he did not intentionally touch the

clothing covering the victim's genitals or genital area in a lewd or lascivious manner.[9]

Therefore, Petitioner's IAAC claim asserted in Ground One is procedurally barred

from federal review.

B.    <u>Ground Two:  "Failure to act to include jury instructions."</u>

Petitioner asserts the jury instructions included an instruction on the lesser

included offense of simple battery, but failed to include an instruction on the lesser

included offense of committing an unnatural and lascivious act (ECF No. 22 at 7–11).

Petitioner contends trial counsel was ineffective for failing to request an instruction

on committing an unnatural and lascivious act, and failing to object to the instruction

on simple battery (*id.*).  With respect to the battery instruction, Petitioner contends the

instruction was improper, because the Information did not allege Petitioner touched

---

[9] Petitioner admits he touched the 10-year old victim's penis over the child's underwear, but Petitioner alleges he did so without a lewd or lascivious intent.  Petitioner's self-serving protestation that he did not have a lewd or lascivious intent falls far short of the "new reliable evidence" standard required to satisfy the fundamental miscarriage of justice exception to the procedural bar.

the victim against his will (*id.*).  Additionally, the evidence at trial failed to show that his touching of the victim was non-consensual (*id.*).  For these reasons, Petitioner contends trial counsel was ineffective for requesting the jury instruction on simple battery (*id.*).

With respect to the instruction on committing an unnatural or lascivious act, Petitioner contends trial counsel should have "objected" when the court determined that Petitioner was not entitled to an instruction on this lesser included offense (ECF No. 22 at 7–11).  Petitioner argues that the evidence established that his poking the victim in the groin was not natural, and the jury could have "exercised pardon power" in finding him guilty of this lesser included offense (*id.*).[10]  Petitioner also asserts an IAAC claim with respect to the alleged errors regarding the jury instructions on lesser included offenses (i.e., the court's giving the battery instruction, and failing to give the unnatural and lascivious act instruction) (*id.*).

Respondent contends the IATC claim presented in Ground Two is unexhausted and procedurally barred because Petitioner abandoned the claim in his appeal of the circuit court's denial of his Amended Rule 3.850 motion (ECF No. 32 at 12–14).  With respect to Petitioner's IAAC claim, Respondent contends the claim is "arguably

---

[10] Florida law provides that "a person who commits any unnatural and lascivious act with another person commits a misdemeanor of the second degree."  Fla. Stat. § 800.02.

exhausted," but Petitioner is not entitled to relief, because he failed to establish that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 14–15, 78–80).

       1.   <u>IATC Claim</u>

Petitioner presented this IATC claim concerning the jury instructions as Amended Ground Four of his Amended Rule 3.850 motion (Ex. J1 at 19–22). The state circuit court held an evidentiary hearing on the claim, at the conclusion of which the court denied the claim (*see* Ex. J4). Petitioner appealed the decision to the First DCA, but in his initial brief, he did not argue error with respect to the lower court's denial of this specific IATC claim (*see* Ex. K).

The Florida Rules of Appellate Procedure provide that in a case where a movant's Rule 3.850 motion is denied after an evidentiary hearing, a movant wishing to appeal the denial of his motion must file an initial brief. *See* Fla. R. App. P. 9.141(b)(3); *see also* <u>Pennington v. State</u>, 34 So. 3d 151, 153 at n.1 (Fla. 1st DCA 2010) (briefing is required in appeal from non-summary denial of Rule 3.850 motion). It is well established in Florida courts that claims for which an appellant has not presented any argument, or for which he provides only conclusory argument, are insufficiently presented for review and are waived. *See* <u>Gamble v. State</u>, 877 So. 2d

706 (Fla. 2004); <u>Reed v. State</u>, 875 So. 2d 415 (Fla. 2004) (same); <u>Cooper v. State</u>, 856 So. 2d 969, 977 n.7 (Fla. 2003); <u>Marshall v. State</u>, 854 So. 2d 1235, 1252 (Fla. 2003) <u>Sweet v. State</u>, 810 So. 2d 854, 870 (Fla. 2002); <u>Johnson v. State</u>, 769 So. 2d 990, 1005–06 (Fla. 2000); <u>Shere v. State</u>, 742 So. 2d 215, 217 n.6 (Fla. 1999).  For purposes of federal habeas, the Florida procedural rule deeming as waived or abandoned those claims for which an appellant has not presented any argument in his appellate brief (or for which he provides only conclusory argument), is a firmly established and regularly followed procedural rule.

As previously discussed, in Petitioner's post-conviction appeal, he presented no argument on the IATC claim presented in Ground Two of the instant § 2254 petition.  Therefore, Petitioner waived appellate review of that claim, and thus did not properly exhaust it in the state courts.  Moreover, Petitioner cannot now take a second appeal from the denial of his Amended Rule 3.850; therefore, the claim is considered procedurally defaulted.

Petitioner contends he is entitled to federal review of the IATC claim, because trial counsel's errors with respect to the jury instructions on the lesser included offenses resulted in a fundamental miscarriage of justice (ECF No. 72 at 46–102).  But as previously discussed, Petitioner has not alleged the existence of new reliable

evidence of his actual innocence.  Therefore, he is not entitled to review of his IATC claim through the "fundamental miscarriage of justice" exception.

To the extent Petitioner argues the procedural default was caused by ineffective assistance of post-conviction appellate counsel (*see* ECF No. 72 at 64), the Supreme Court has explicitly held that attorney errors made in appeals from initial-review collateral proceedings do not constitute cause excusing a procedural default.  *See* Martinez, 132 S. Ct. at 1320 (ineffective assistance of counsel can constitute cause of a procedural default in an initial-review collateral proceeding, but not an appeal from an initial-review collateral proceeding).  Therefore, Petitioner failed to demonstrate cause for the procedural default of the IATC claim presented in Ground Two.  Accordingly, the claim is  procedurally barred from federal review.

### 2.    IAAC Claim

Petitioner contends his appellate counsel was ineffective on direct appeal for failing to argue both trial court error and IATC with respect to the giving of the jury instruction on the lesser included offense of simple battery, and the failure to give an instruction on the lesser included offense of committing an unnatural and lascivious act.

### a.    Clearly Established Federal Law

The standard for evaluating a claim of IAAC is the standard set forth in Strickland. *See* Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 746 (2000) (citation omitted). As previously discussed, the two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland, 466 U.S. at 697. The focus of inquiry under the performance prong of Strickland is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* at 691. Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel.

Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Diaz v. Sec'y Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir.1988)).

b. Federal Review of State Court Decision

Petitioner presented this IAAC claim as Ground Four of his state habeas petition (Ex. V at 16–18). The First DCA denied the petition "on the merits" without further explanation (Ex. W).

"[T]he summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also*

Harrington, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision. *See* Harrington, 562 U.S. at 98. The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 562 U.S. at 102; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

To the extent Petitioner contends appellate counsel was ineffective on direct appeal for failing to present an IATC claim with respect to the jury instructions, the First DCA's rejection of this claim could have been based upon the theory that

appellate counsel was not ineffective, because the IATC claim was not apparent from the record, and a proper and more effective remedy was available under Rule 3.850 motion.  Generally, under Florida law, IATC claims are not cognizable on direct appeal but are more appropriately raised in a motion for postconviction relief.  In Smith v. State, 998 So. 2d 516 (Fla. 2008), the Florida Supreme Court explained the proper procedure for presenting IATC claims:

> Claims of ineffective assistance of trial counsel are usually presented in a postconviction motion under Florida Rule of Criminal Procedure 3.850.  Under that rule, the circuit court can be specifically presented with the claim, and apply the Strickland standard with reference to the full record and any evidence it may receive in an evidentiary hearing, including trial counsel's testimony.  Thus, ineffective assistance claims are not usually presented to the judge at trial, and we have repeatedly stated such claims are not cognizable on direct appeal.  *E.g.*, Martinez v. State, 761 So. 2d 1074, 1078 n.2 (Fla. 2000) ("With rare exception, ineffective assistance of counsel claims are not cognizable on direct appeal."); McKinney v. State, 579 So. 2d 80, 82 (Fla. 1991) ("Claims of ineffective assistance of counsel are generally not reviewable on direct appeal but are more properly raised in a motion for postconviction relief."); Kelley v. State, 486 So. 2d 578, 585 (Fla. 1986) (same); State v. Barber, 301 So. 2d 7, 9 (Fla. 1974) (holding that claims of ineffective assistance of counsel "cannot properly be raised for the first time on direct appeal" because the trial court has not previously ruled on the issue).  We recognize that "[t]here are rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue." Blanco v. State, 507 So. 2d 1377, 1384 (Fla. 1987); *see also* Gore v. State, 784 So. 2d 418, 437–38 (Fla. 2001) ("A claim of ineffective assistance of counsel may be raised on direct appeal only where the

ineffectiveness is apparent on the face of the record."); <u>Mansfield v. State</u>, 758 So. 2d 636, 642 (Fla. 2000) (same).  Thus, in the rare case, where both prongs of <u>Strickland</u>—the error and the prejudice—are manifest in the record, an appellate court may address an ineffective assistance claim.

<u>Smith</u>, 998 So. 2d at 522–23.

As suggested in <u>Smith</u>, those rare instances where direct review of IATC claims will be available, have been well delineated by case law.  A review of these cases demonstrates the qualitative distinction between those IATC claims eligible for direct review, and those reserved for collateral attack.  *Compare* <u>Kidd v. State</u>, 978 So. 2d 868, 869 (Fla. 4th DCA 2008) (holding that defendant's claims of ineffective assistance of counsel were not cognizable on direct appeal, where such claims were not apparent on the face of the record; defendant claimed counsel was ineffective for allowing the State to introduce inadmissible hearsay in the form of prior testimony of an unavailable witness even though the State failed to prove the unavailability of the witness; however, the record showed that trial counsel did not simply fail to object, rather, counsel and defendant discussed the matter and decided for their own reasons to allow the State to admit the testimony uncontested), *and* <u>Criner v. State</u>, 943 So. 2d 224, 226 (Fla. 1st DCA 2006) (same, where defendant's ineffective assistance claims concerned strategic decisions made by defense counsel), *and* <u>Burgess v. State</u>, 776 So.

2d 1035, 1036 (Fla. 4th DCA 2001) (same, where defendant argued his attorney should have moved to suppress the victim's identification of him at a live post-information, pre-trial lineup because he did not have counsel present; however, the record did not clearly show that defendant was unrepresented by counsel at the lineup), *with* Foster v. State, 387 So. 2d 344, 345–46 (Fla. 1980) (reversing conviction on direct appeal where record demonstrated counsel's representation was impaired by conflicting interests—court-appointed attorney jointly represented defendant and a state witness who testified against defendant), *and* Ross v. State, 726 So. 2d 317, 319 (Fla. 2d DCA 1998) (addressing ineffective assistance claim on direct appeal where record revealed counsel failed to object to prosecutor's inappropriate and prejudicial comments during closing argument—prosecutor repeatedly bolstered arresting officer's credibility, attacked and ridiculed defendant (characterizing his testimony as "preposterous," "nonsense," and "bologna")), and attacked and ridiculed defense witnesses (describing them as "pathetic," "ridiculous," "inappropriate," "insulting" to the jury's intelligence, "totally incredible," and as having "just flat out" lied"), *and* Gordon v. State, 469 So. 2d 795, 797 (Fla. 4th DCA 1985) (addressing ineffective assistance claim on direct appeal where the record revealed defense counsel failed to object to 104 instances of improper questions and comments by the prosecutor).

In the cases allowing direct review, the appellate court suffered no inability to glean all necessary facts from the trial court record.  The same may not be said here. The trial transcript demonstrates that during the charge conference, Petitioner's trial counsel stated that he spoke with Petitioner regarding "category two" lesser included offenses, and counsel requested an instruction on simple battery and an instruction on unnatural and lascivious act (Ex. B2C at 168–71).  The prosecutor did not object to the battery instruction, but did object to the unnatural and lascivious act instruction (*id.* at 171).  The trial court allowed the battery instruction but denied the defense's request for the unnatural and lascivious act instruction (*id.* at 172).

Given this bare record, it was reasonable for Petitioner's appellate counsel to conclude that it was not apparent on the face of the trial record that trial counsel was ineffective with respect to the jury instructions on lesser included offenses.  Further, Petitioner failed to show a reasonable probability that his direct appeal would have had a different outcome if appellate counsel had raised an IATC claim with respect to jury instructions on lesser included offenses.  Therefore, the First DCA's rejection of this aspect of Petitioner's IAAC claim was not contrary to or an unreasonable application of <u>Strickland</u>.

To the extent Petitioner contends appellate counsel was ineffective on direct appeal for failing to present a claim of trial court error with respect to the jury instructions, part of Petitioner's claim is refuted by the appellate record.  The appellate record demonstrates that Petitioner's appellate counsel <u>did</u> argue that the trial court erred by denying defense counsel's request for an instruction on the lesser included offense of committing an unnatural and lascivious act (*see* Ex. C).  Therefore, the First DCA's rejection of this aspect of Petitioner's IAAC claim was clearly not unreasonable.

This leaves the question of whether the First DCA's rejection of the remaining part of this IAAC claim—that appellate counsel was ineffective for failing to argue that the trial court erred by giving the simple battery instruction—was reasonable. The trial record clearly demonstrates that defense counsel requested the simple battery instruction, which was a "Category Two" or permissive lesser included offense.  *See* Fla. Standard Jury Instruction in Crim. Cases, 11.10(c).  By affirmatively requesting the instruction, the defense waived any claim of trial court error on direct appeal.  *See* <u>Armstrong v. State</u>, 579 So.2d 734, 735 (Fla. 1991) ("By affirmatively requesting the instruction he now challenges, [the defendant] has waived any claim of error in the instruction.").  The First DCA's summary rejection of Petitioner's IAAC claim could

have been based upon the theory that appellate counsel was not ineffective for failing to argue an issue that was waived below, because it would not have been heard on the merits on direct appeal. This was a reasonable application of <u>Strickland</u>; therefore, Petitioner is not entitled to federal habeas relief on the IAAC claim presented in Ground Two.

C.   <u>Ground Three: "Failure to prove element of intent."</u>

Petitioner alleges there was no direct evidence on the intent element of the offense, and the circumstantial evidence on the intent element failed to overcome his hypothesis of innocence, i.e., that he "poked" the child victim's penis over his underwear in retaliation, and as punishment, for the victim's previously doing the same thing to Petitioner (ECF No. 22 at 12–13). Petitioner faults both trial counsel and appellate counsel for failing to challenge the sufficiency of the evidence on the intent element (*id.*).

Respondent contends Petitioner procedurally defaulted the IATC claim, because he failed to fairly present it in his amended Rule 3.850 motion or in the post-conviction appeal (ECF No. 32 at 15–16). Respondent contends Petitioner's IAAC claim is "arguable exhausted," but Petitioner is not entitled to federal habeas relief,

because the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 16, 81).

        1.    IATC Claim

In Petitioner's Amended Rule 3.850 motion, Petitioner did not present an IATC claim based upon trial counsel's failure to challenge the sufficiency of the evidence as to the intent element of the crime (*see* Ex. J1 at 1–47). Petitioner appears to argue ineffective assistance of his post-conviction counsel as cause for the procedural default (*see* ECF No. 72 at 107).

Before its 2012 decision in Martinez, the Supreme Court had long held that § 2254 petitioners cannot rely on errors made by their state collateral counsel to establish cause. *See* Coleman, 501 U.S. at 752–53. Martinez created a limited, equitable exception to Coleman where, (1) "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding," as opposed to on direct appeal; (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland"; and (3) "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one." Martinez, 566 U.S. at 14 (citations omitted). Accordingly, the petitioner must "establish that his collateral counsel's conduct 'fell below an objective

standard of reasonableness,' and that, 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Hittson v. GDCP Warden, 759 F.3d 1210, 1262 (11th Cir. 2014) (quoting Strickland, 466 U.S. at 688).

In Hittson, the Eleventh Circuit explained:

> [T]he merits of the underlying claim is only a part of the Strickland analysis. With unlimited time and the benefit of hindsight, a petitioner can come up with any number of potentially meritorious ineffective-assistance claims that he now wishes his collateral counsel had raised. However, a petitioner does not establish constitutionally defective performance simply by showing that (a) potentially meritorious claims existed and (b) his collateral counsel failed to raise those claims. Murray, 477 U.S. at 486, 106 S. Ct. at 2644 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751–52, 103 S. Ct. 3308, 3313, 77 L. Ed. 2d 987 (1983). "[A] per se rule that . . . the professional advocate, [is not] allowed to decide what issues are to be pressed . . . seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation." Id. at 751, 103 S. Ct. at 3313.
>
> As we have explained, Strickland instructs courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"—that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 689–90, 104 S. Ct. at 2065–66. To overcome this presumption, a petitioner must "establish that no competent counsel would have taken the action that his counsel

did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

> Thus, to show that his habeas counsel failed to provide the level of representation required by Strickland, [the petitioner] must show more than the mere fact they failed to raise potentially meritorious claims; he must show that no competent counsel, in the exercise of reasonable professional judgment, would have omitted those claims.

Hittson, 759 F.3d at 1263 (footnote omitted).

Here, Petitioner failed to show there a reasonable probability that the result of the Rule 3.850 proceeding would have been different if his post-conviction counsel had presented an IATC claim based upon trial counsel's failure to argue that there was insufficient evidence on the intent issue to submit the charge to the jury.

Though not precisely defined, "lewd" and "lascivious" conduct generally denotes "the unlawful indulgence of lust," "gross indecency with respect to the sexual relations," or "wicked, lustful, unchaste, licentious, or sensual" conduct. *See* Chesebrough v. State, 255 So. 2d 675, 677 (Fla. 1971). Lewdness must be determined on a case-by-case basis and may be imputed from the circumstances. *See* Farrell v. State, 791 So. 2d 598, 599 (Fla. 3d DCA 2001); W.R.H. v. State, 763 So. 2d 1111, 1112 (Fla. 4th DCA 1999); Egal v. State, 469 So. 2d 196, 197 (Fla. 2d DCA 1985).

Florida courts have held that the question of whether a defendant's act was committed lewdly or lasciviously is one of fact.  *See* Rosen v. State, 940 So. 2d 1155, 1160 (Fla. 5th DCA 2006) (citing State v. Mitchell, 624 So. 2d 859, 860 (Fla. 5th DCA 1993)).  Thus, it was up to the jury to decide whether Petitioner's behavior violated the statute based upon the totality of the circumstances.  *See* Rosen, 940 So. 2d at 1160; Method v. State, 920 So. 2d 141, 143–44 (Fla. 4th DCA 2006) (whether the defendant's act was committed with lewd and lascivious intent depended upon a factual determination; thus, it was an issue which the jury must decide based upon all factual inferences and not one for the court as a matter of law); Washington v. State, 766 So. 2d 325 (Fla. 4th DCA 2000).

At Petitioner's trial, the 10-year old child victim, A.K., testified that while he and Petitioner were "wrestling" in Petitioner's home, Petitioner said he was going to "squish" A.K. "like a pea" and then laid on top of A.K., put his hand inside A.K.'s pants, and touched the child's penis over his underwear (Ex. B2B at 109, 114–17).  A.K. also testified that on another occasion while he and Petitioner were "wrestling," Petitioner rolled over on top of him and his (A.K.'s) hand "got caught on [Petitioner's] penis." (*id.* at 119–20).  A.K. testified he was unable to move his hand with Petitioner on top of it; and Petitioner did not immediately move but instead sat there for a minute

with A.K.'s hand on his penis (*id.*).  A.K. testified that both incidents "freaked him

out" (Ex. B2C at 137).  The State also presented evidence that Petitioner engaged in

conduct with A.K. that was consistent with child molesters' practice of "grooming"

their victims, including enticing the victim into his home with toys and games, buying

the victim gifts, and taking him on outings (for example, to a movie, a flea market, a

toy store, and "Fun Station") (Ex. B2B at 26–28, 109–16, 120–21; Ex. B2C at 132–33,

147).

After the State rested its case, Petitioner's counsel made a motion for judgment

of acquittal on the ground that the evidence "mitigate[d] against the veracity of the

[victim]" (Ex. B2C at 162).  The trial court denied the motion on the ground that the

evidence was sufficient to go to the jury (*id.*).

In light of the record, and in light of the previously discussed Florida law

suggesting that the trial court could not have determined as a matter of law that

Petitioner's act of touching A.K.'s penis over his underwear was not committed with

a lewd or lascivious intent, Petitioner has failed to show that his post-conviction

counsel was deficient for failing to present an IATC claim based upon trial counsel's

alleged failure to argue that the evidence on the intent issue was insufficient to submit

the charge to the jury.  *See, e.g.,* Gilsdorf v. Sec'y, Dep't of Corr., No.

3:14cv167/MCR/CJK, 2016 WL 5079291, at 7 (N.D. Fla. Feb. 11, 2016), *Report and Recommendation Adopted By*, 2016 WL 5024201 (N.D. Fla. Sept. 16, 2016) (holding that a defendant cannot demonstrate prejudice as a result of counsel's failure to move for judgment of acquittal based on insufficiency of evidence to establish intent when the evidence is sufficient to present a question for the jury on whether the defendant intentionally touched the victim in a lewd or lascivious manner).   Additionally, Petitioner failed to show there is a reasonable probability the post-conviction court would have granted relief on the IATC claim if Petitioner's post-conviction counsel had presented it.   Therefore, Petitioner failed to satisfy the <u>Martinez</u> exception to the procedural bar with respect to the IATC claim asserted in Ground Three.

Petitioner also contends he is entitled to federal review of his IATC claim under the miscarriage of justice exception, because there was insufficient evidence on the intent element (*id.* at 104–06, 108).   However, the Supreme Court has explained that "'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).   And, as previously discussed, Petitioner has not alleged the existence of new reliable evidence of his actual innocence.   Therefore, he is not entitled to review of his IATC claim through the "fundamental miscarriage of justice" exception.

2. <u>IAAC Claim</u>

Petitioner also asserts an IAAC claim based upon appellate counsel's failure to argue, on direct appeal, that his conviction constituted fundamental error because there was, as a matter of law, insufficient evidence on the intent element of the charge. Petitioner presented this IAAC claim as Ground One, part B in his state habeas petition, wherein he argued there was "no discernable basis" for the jury to conclude, beyond a reasonable doubt, that he had the requisite intent, thus appellate counsel should have argued that the evidence was insufficient as a matter of law (Ex. V at 8–10). The First DCA denied the claim "on the merits" without further explanation (Ex. W).

The undersigned interprets the First DCA's decision rejecting Petitioner's IAAC claim as implicitly determining that no fundamental error occurred with respect to the sufficiency of the evidence to support the conviction. *See* <u>Pinkney</u>, 876 F.3d at 1297–99.[11] *See* <u>Pinkney v. Sec'y, DOC</u>, 876 F.3d 1290, 1297–99 (11th Cir. 2017)

---

[11] The only other theory that could have supported the First DCA's rejection of Petitioner's IAAC claim is that, even if the lack of evidence of intent <u>did</u> amount to fundamental error under Florida law, appellate counsel's failure to raise the issue was not ineffective assistance of counsel. That theory would have been contrary to or an unreasonable application of <u>Strickland</u> and its progeny. But when faced with a summary state court decision that is subject to more than one interpretation, the federal habeas court must choose the interpretation of the decision that is consistent with the state court knowing and correctly applying federal law, including ineffective assistance of counsel law. *See* <u>Allen v. Sec'y, Fla. Dep't of Corr.</u>, 611 F.3d 740, 748 (11th Cir. 2010) ("The usual presumption that state courts know and follow the law is even stronger in the

(interpreting the Florida appellate court's unexplained decision rejecting petitioner's IAAC claim as having been based on the theory that the alleged error was not fundamental error and, as a result, the direct appeal court would not have decided that claim on the merits if appellate counsel had raised it), *petition for cert. docketed* June 27, 2018. The fundamental error determination is an issue of state law to which the federal habeas court must defer. *Id.* at 1299 (citing Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Wainwright v. Goode, 464 U.S. 78, 84, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983) (stating that the views of state appellate courts with respect to state law "are binding on the federal courts"); Bates v. Sec'y, Fla. Dep't of Corr., 768 F.3d 1278, 1303 (11th

---

AEDPA context because § 2254(d)'s highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt.") (alteration in original and quotation marks omitted); Ventura v. Att'y Gen., Fla., 419 F.3d 1269, 1285 (11th Cir. 2005) ("[T]he Supreme Court has explained that '§ 2254(d) requires that state-court decisions be given the benefit of the doubt. Readiness to attribute error is inconsistent with the presumption that state courts know and follow the law.'") (quoting Holland v. Jackson, 542 U.S. 649, 655, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004)).

Giving the First DCA's decision the benefit of the doubt and assuming, as the federal court must, that the state court knew and followed Strickland and other Supreme Court decisions on ineffective assistance of counsel, the undersigned concludes that the First DCA would have granted Petitioner relief on the IAAC claim if it had decided that fundamental error occurred with respect to the sufficiency of the evidence on the intent element (it would have granted relief because if the error was fundamental, the direct appeal court could have decided the issue on the merits, which would mean that appellate counsel's failure to raise the issue was ineffective assistance of counsel).

Cir. 2014) ("[T]he Florida Supreme Court's interpretation of state law . . . is binding

on federal courts.")).  The failure by Petitioner's appellate counsel to raise this issue

cannot be deemed deficient performance, and Petitioner cannot show he was

prejudiced by the alleged deficiency, because the sufficiency-of-the-evidence

argument had no arguable basis for success.  Therefore, the First DCA's rejection of

this IAAC claim was not an unreasonable application of Strickland.  Petitioner is thus

not entitled to federal habeas relief on the IAAC claim presented in Ground Three.

>    D.    Ground 4A:  IATC based upon trial counsel's failure to move for
>    discharge on speedy trial grounds, pursuant to Rule 3.191 of the Florida Rules
>    of Criminal Procedure; and IAAC based upon appellate counsel's failure to
>    argue, on direct appeal, that Petitioner was entitled to discharge under Rule
>    3.191 (*see* ECF No. 22 at 15–21) (Restated).
>
>    Ground 4B:  IATC based upon trial counsel's failure to assert
>    Petitioner's speedy trial rights under the Constitution; and IAAC based upon
>    appellate counsel's failure to argue, on direct appeal, that the excessive delay
>    in prosecuting Petitioner violated his federal due process and speedy trial rights
>    (*see* ECF No. 22 at 34) (Restated).
>
>    Ground Five:  IATC based upon trial counsel's failure to file a notice of
>    expiration, motion for discharge, petition for prohibition, motion to dismiss for
>    lack of subject matter jurisdiction, and motion to dismiss based upon a violation
>    of Petitioner's speedy trial rights, where the Leon County Sheriff's Office held
>    an active warrant for Petitioner's arrest on July 10, 2007, and held Petitioner in
>    the Leon County Jail on July 11, 2007; and IAAC based upon appellate
>    counsel's failure to argue, on direct appeal, that Petitioner's speedy trial rights
>    were triggered on July 11, 2007 (*see* ECF No. 22 at 38–39) (Restated).

Ground Six:  IATC based upon trial counsel's failure to file motion for discharge on the ground that Petitioner was "de facto arrested" when he was fingerprinted and placed in custody at the Leon County Jail on July 11, 2007; and IAAC based upon appellate counsel's failure to argue, on direct appeal, that Petitioner was entitled to discharge on this ground (*see* ECF No. 22 at 40) (Restated).

Ground Seven:  IATC based upon trial counsel's failure to assert that Petitioner was entitled to discharge under Rule 3.191 because he was arrested on July 11, 2007, even though he was not told the nature of the State charge; and IAAC based upon appellate counsel's failure to argue, on direct appeal, that Petitioner was entitled to discharge on this ground (*see* ECF No. 22 at 40) (Restated).

Ground Eight:  IATC based upon trial counsel's failure to seek discharge under Rule 3.191, where the Tallahassee Police Department, Leon County Sheriff's Office and federal Fugitive Task Force held outstanding State and federal warrants, and the federal Fugitive Task Force arrested Petitioner at an airport on July 11, 2007, but officials then illegally "unarrested" Petitioner by illegally withholding execution of the State warrant; and IAAC based upon appellate counsel's failure to argue, on direct appeal, that Petitioner was entitled to discharge on this ground (*see* ECF No. 22 at 41) (Restated).

Ground Nine:  IATC based upon trial counsel's failure to seek discharge under Rule 3.191, where the federal Fugitive Task Force arrested Petitioner on July 11, 2007, and then left Petitioner at the Leon County Jail where he was fingerprinted, and where the Leon County Sheriff knew that there were outstanding State warrants and thus had a duty to arrest Petitioner on July 11, 2007; and IAAC based upon appellate counsel's failure to argue, on direct appeal, that Petitioner was entitled to discharge on this ground (*see* ECF No. 22 at 41) (Restated).

Ground Ten:  IATC based upon trial counsel's failure to assert Petitioner's state and federal speedy trial rights by arguing that Petitioner was practically or technically arrested on the State charge on July 11, 2007, not in March of 2009; and IAAC based upon appellate counsel's failure to argue, on

direct appeal, a speedy trial violation on this ground (*see* ECF No. 22 at 42) (Restated).

Ground Eleven:  IATC based upon trial counsel's failure to argue that Petitioner was deprived of his state and federal speedy trial protections where the State filed the Information on July 14, 2008, but failed to notify Petitioner of the charge until March of 2009, when he was transported to the Leon County Jail; and IAAC based upon appellate counsel's failure to argue, on direct appeal, that Petitioner was deprived of his speedy trial rights (*see* ECF No. 22 at 43) (Restated).

Ground Twelve:  IATC based upon trial counsel's failure to investigate the record and failure to file the requisite "motions/notice/discharge/prohibition" or challenge the trial court's subject matter jurisdiction based upon "fraud on the court" by the Assistant State Attorney, who knowingly and maliciously filed the Information more than 175 days after Petitioner was "held/arrested" to answer the State charge on July 11, 2007; and IAAC based upon appellate counsel's failure to argue, on direct appeal, that Petitioner was entitled to discharge on this ground (*see* ECF No. 22 at 44) (Restated).

Ground Thirteen:  IATC based upon trial counsel's failure to seek Petitioner's discharge under Rule 3.191 based upon "police misconduct" where the Tallahassee Police Department had a duty to arrest Petitioner on the outstanding State warrant on July 11, 2007, and sent Petitioner to the Leon County Jail to be booked, but then "unarrested" him by placing a "hold" on him instead of filing formal arrest paperwork, which allowed the prosecutor to control the timing of the prosecution; and IAAC based upon appellate counsel's failure to argue, on direct appeal, that Petitioner's speedy trial rights were violated by police misconduct (*see* ECF No. 22 at 45) (Restated).

Ground Fourteen:  IATC based upon trial counsel's failure to assert that police misconduct and fraud upon court by State Attorney unconstitutionally denied Petitioner his rights under Rule 3.191 and his federal rights to a speedy trial and due process, where the Leon County Sheriff's Office did not complete "formal paperwork of arrest" when he was booked and taken into custody at the

Leon County Jail on July 11, 2007, even though they had a legal duty to do so under state statutes and Sheriff's Office policies and procedures; and IAAC based upon appellate counsel's failure to argue, on direct appeal, that this police misconduct violated Petitioner's state and federal rights (*see* ECF No. 22 at 46) (Restated).

Ground Fifteen:  IATC based upon trial counsel's failure to investigate case records and failure to file "motions/notices for discharge, prohibition" or to challenge the Information as void under Rule 3.191, where  Petitioner was arrested on July 11, 2007, and a search warrant resulting in the seizure of his property was executed on July 24, 2007, but the Information was filed more than 175 days later; and IAAC based upon appellate counsel's failure to argue this issue on direct appeal (*see* ECF No. 22 at 47) (Restated).

 In Grounds Four through Fifteen, Petitioner alleges he was arrested and held in custody on the lewd and lascivious molestation charge on July 11, 2007, but the State did not formally charge him until July 14, 2008, and he did not go to trial until December 10, 2009 (ECF No. 22 at 15–56).  Petitioner contends trial counsel was ineffective for failing to assert his speedy trial rights under Rule 3.191 of the Florida Rules of Criminal Procedure, and his federal rights to a speedy trial and due process under the Sixth and Fourteenth Amendments (*id.*).  Petitioner contends his appellate counsel was ineffective for failing to present state and federal speedy trial issues on direct appeal (*id.*).

Petitioner asserts he presented these IATC and IAAC claims in the Rule 3.850 proceeding and his state habeas petition (*see id.* at 15, 22).  Petitioner asserts he also

attempted to present his speedy trial arguments in a pro se motion he filed in the circuit court during the pendency of the Rule 3.850 proceeding, but the court struck the motion as a nullity, because Petitioner was represented by counsel (*see id.* at 22, 35). Petitioner contends the post-conviction court's determination that he was arrested in March of 2009 was unreasonable, because the court disregarded the evidence adduced at the evidentiary hearing which showed he was initially taken into custody on the charge on July 11, 2007 (*id.* at 22–23). Petitioner also asserts the state court relied upon perjured testimony of Sergeant Booth (from the Tallahassee Police Department) at the post-conviction evidentiary hearing (*id.*). Petitioner contends he is thus entitled to de novo review of his IATC claims by this federal court (*id.*). Petitioner further contends he is entitled to federal review of his claims under Martinez v. Ryan, because his post-conviction counsel was ineffective in presenting the IATC claims related to his state and federal speedy trial rights (Claims One and Eighteen of Petitioner's Amended Rule 3.850 motion) (*id.* at 24).

Respondent contends the IATC claims presented in Grounds Four through Fifteen are unexhausted and procedurally barred, because even though the claims appear to be similar or "somewhat" similar to Claims One and Eighteen of Petitioner's

Amended Rule 3.850 motion, Petitioner abandoned the claims in his appeal of the circuit court's denial of the Amended Rule 3.850 motion (ECF No. 32 at 17–62).

With respect to Petitioner's IAAC claims, Respondent contends Grounds Four and Five are "arguably exhausted," but Petitioner is not entitled to relief, because he failed to establish that the state court's adjudication of the claims was contrary to or an unreasonable application of clearly established federal law (*id.* at 19, 21–22, 85–90).  Respondent contends the IAAC claims presented in Grounds Six through Fifteen are procedurally defaulted, because although they appear to be "somewhat similar" to the IAAC claim presented in Ground Three of Petitioner's state habeas petition, mere similarity is insufficient to satisfy the exhaustion requirement (*id.* at 24–26, 28–30, 32–34, 37–39, 41–43, 45–47, 49–51, 54–55, 58–59, 62–64). Respondent contends the IAAC claims are now procedurally barred under state law; therefore, they are procedurally barred from federal review (*id.*).

### 1. IATC Claims

Petitioner fairly presented all of the IATC claims asserted in Grounds Four through Fifteen to the state circuit court in the Rule 3.850 proceeding.  In Amended Claims One and Eighteen of his Amended Rule 3.850 motion, Petitioner argued he was denied effective assistance of trial counsel, because counsel failed to assert his

speedy trial rights under Rule 3.191 of the Florida Rules of Criminal Procedure and the federal Constitution (Ex. J1 at 3–4, 12–13, 44).  All of the facts underlying Grounds Four through Fifteen of the § 2254 petition were presented to the state circuit court through Petitioner's Amended Rule 3.850 motion, submissions by Petitioner's post-conviction counsel (Attorney Daren Shippy), and evidence adduced at the post-conviction evidentiary hearing (Ex. J1 at 109–53, Ex. J4).  At the conclusion of the evidentiary hearing, the circuit court announced its finding that Petitioner's arrest on the lewd or lascivious molestation charge occurred on March 13, 2009, not on July 11, 2007 (*see* Ex. J4 at 712–16).  The court ruled that Petitioner's trial counsel was not ineffective for failing to assert Petitioner's speedy trial rights (*id.* at 716).  The circuit court issued a written order denying the amended Rule 3.850 motion on June 9, 2014 (Ex. J1 at 154).  Petitioner's counsel appealed the decision to the First DCA, but in the initial brief, counsel did not argue error with respect to the lower court's denial of the IATC claims involving counsel's failure to assert Petitioner's speedy trial rights (*see* Ex. K).

For the reasons discussed *supra* in Ground Two, subsection 1, Petitioner waived appellate review of the IATC claims concerning counsel's failure to assert his state and federal speedy trial rights.  Therefore, the claims are considered procedurally

defaulted.  As also discussed *supra* in Ground Two, Petitioner has not shown he is entitled to review of his IATC claims through the fundamental miscarriage of justice/actual innocence exception, nor can he rely upon ineffective assistance of post-conviction <u>appellate</u> counsel as cause to excuse the procedural default.  *See* <u>Martinez</u>, 132 S. Ct. at 1320 (ineffective assistance of counsel can constitute cause of a procedural default in an initial-review collateral proceeding, but not an appeal from an initial-review collateral proceeding).  Therefore, the IATC issues presented in Ground Four through Fifteen are procedurally barred from federal review.

### 2.    <u>IAAC Claim</u>

Because Respondent contends some of the IAAC claims presented in Grounds Four through Fifteen were not fairly presented to the state courts, the court will first determine which IAAC claims <u>were</u> fairly presented.  In Ground Three of Petitioner's state habeas petition, Petitioner argued that his appellate counsel was ineffective for failing to argue, on direct appeal, that Petitioner was denied his speedy trial rights under Rule 3.191 of the Florida Rules of Criminal Procedure, and the Sixth and Fourteenth Amendments of the Constitution (Ex. V at 12–16).  Petitioner argued that the State failed to bring him to trial within 175 days of March 13, 2009, the date of his "second arrest" (*id.* at 12, 14).  Petitioner argued that the trial record showed that the

State filed a motion for continuance on September 4, 2009 (the 175th day of the speedy trial period), and the trial court granted the motion for continuance on September 8, 2009, after the speedy trial period ran (*id.* at 14–15).  Petitioner argued that the trial court's granting the continuance did not extend the speedy trial time, and that the court lacked jurisdiction to do so (*id.* at 13–15).  Petitioner alleged that he was not taken to trial within the time frame mandated by Rule 3.191 (*id.* at 16).  Petitioner argued:

> These instances are all discoverable from the record and indicate ineffective assistance of trial counsel and thus also indicate ineffective assistance of appellate counsel in that, not only were there Speedy trial Rule violations, but also Speedy Trial Act, 6th and 14th Amendments, due process and additional time for State to prepare its case with prejudice to Petitioner, as well as a risk of being procedurally barred in Federal Habeas court for failing to address the issue(s) on direct appeal.

(Ex. V at 16).

    This record demonstrates that the only speedy-trial-related IAAC claims that were fairly presented to the First DCA were the following two claims:  (1) appellate counsel was ineffective for failing to argue that Petitioner's speedy trial rights were violated by the State's failure to bring him to trial within 175 days of <u>March 13, 2009</u>, the date of his "second arrest," and (2) appellate counsel was ineffective for failing to argue an IATC claim based upon trial counsel's failure to assert Petitioner's speedy

trial rights based upon the State's failure to bring him to trial within 175 days of March 13, 2009.  Any other IAAC claims presented in Grounds Four through Fifteen of Petitioner's federal habeas petition were not fairly presented to the First DCA and, for the reasons discussed *supra* in Ground One, subsection 2, are procedurally barred from federal review.

This leaves only the two IAAC claims previously identified:  (1) appellate counsel was ineffective for failing to argue that Petitioner's speedy trial rights were violated by the State's failure to bring him to trial within 175 days of March 13, 2009, the date of his "second arrest," and (2) appellate counsel was ineffective for failing to argue an IATC claim based upon trial counsel's failure to assert Petitioner's speedy trial rights based upon the State's failure to bring him to trial within 175 days of March 13, 2009.  The First DCA denied the IAAC claim "on the merits" without further explanation (Ex. W).

With respect to appellate counsel's failure to assert an IATC claim, the First DCA's rejection of this claim could have been based upon the theory that the trial record did not include all of the necessary facts for the appellate court to adjudicate the merits of an IATC claim on direct appeal.  *See* Smith, 998 So. 2d at 522–23.  This

theory was a reasonable basis for rejecting Petitioner's IAAC claim related to appellate counsel's failure to assert a speedy-trial-related IATC claim on direct appeal.

With respect to appellate counsel's failure to argue fundamental error (which counsel would have had to do, since the speedy trial issue was unpreserved) with respect to the State's failure to bring Petitioner to trial within 175 days of March 13, 2009, the First DCA implicitly determined that it was not fundamental error. *See* Pinkney, 876 F.3d at 1297–99 (interpreting the Florida appellate court's unexplained decision rejecting petitioner's IAAC claim as having been based on the theory that the alleged error in the trial court was not fundamental error), *petition for cert. docketed* June 27, 2018. This is a determination of state law to which the federal habeas court must defer. *Id.* at 1299. Since the alleged error in the trial court did not constitute fundamental error, appellate counsel was not deficient for failing to raise it, and Petitioner suffered no prejudice, in the Strickland sense, from counsel's failure to raise it. Petitioner is thus not entitled to federal habeas relief on the exhausted portions of the IAAC claims presented in Grounds Four through Fifteen.

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" Buck v. Davis, 580 U.S.—, 137 S. Ct. 773 (2017) (citing Miller-El, 537 U.S. at 327). The petitioner here cannot make that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party

may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

1.    Petitioner's "RE: Tallahassee Police Chief Letter/Objection to Denial of Motion for Judicial Notice and Resubmission [sic] of Motion and Motion for Subpoena of Records," "Resubmission [sic] of Motion for Expert Witness," "Request for Court Order/Motion for Limited Evidentiary Hearing on Lack of Subject Matter Jurisdiction by State," "Motion for Appointment of Counsel for Conducting Jurisdictional Limited Evidentiary Hearing on Issue of Lack of Subject Matter Jurisdiction," "Motion for Evidentiary Hearing," "Request for Court Order/Motion Ordering State to File Written Response Addressing Issue of Arrest Start [sic] of FRCP 3.191 Speedy Trial Period Foundational [sic] to Issue of State's Lack of Subject Matter Jurisdiction," and "Subpoena of Original Videotape/Motion in Support of Motion for Expert Videotape Clarification State to Provide Original" (ECF Nos. 64, 65, 66, 68, 69, 70, 71) are **DENIED**.

2.    Petitioner's "Request for Judicial Notice" and "Notice Request [sic] for Judicial Notice—Recent Caselaw [sic] Jury Instructions" (ECF Nos. 67, 73) are

**GRANTED ONLY TO THE EXTENT** that the court has reviewed the cases cited

by Petitioner.

And it is respectfully **RECOMMENDED**:

1.     That the third amended petition for writ of habeas corpus (ECF No. 22)

be **DENIED**; and

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 24<u>th</u> day of September 2018.


<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**